IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL SECURITY ARCHIVE**<br>2130 H Street, N.W., Suite 701<br>The Gelman Library<br>Washington, DC 20037,<br><br>      Plaintiff,<br>v.<br><br>**CENTRAL INTELLIGENCE AGENCY**<br>Washington, DC 20505<br><br>      Defendant. | C.A. No. 21-2857 |

### COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff the National Security Archive ("Plaintiff" or the "Archive") seeks injunctive and other appropriate relief for the processing and release of agency records requested by Plaintiff from Defendant Central Intelligence Agency ("CIA" or "Defendant") on August 2, 2021. Specifically, the Archive seeks disclosure of a limited number of Lieutenant General Leonard Perroots' 1989 records related to the "1983 Soviet 'War Scare'." More than 85 days after submitting its FOIA request, the Archive has yet to receive a single responsive document from the CIA.

### JURISDICTION AND VENUE

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii) and 28 U.S.C. § 1331.

3. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## THE PARTIES

4. Plaintiff the National Security Archive is an independent non-governmental research institute and library. The Archive was established in 1985 to promote research and public education about the U.S. governmental and national security decision-making process. It collects, analyzes, and publishes documents acquired through FOIA in order to promote and encourage openness and government accountability. The Archive serves as a repository of government records on a wide range of topics pertaining to the national security, foreign, intelligence, and economic policies of the United States. The Archive is a representative of the news media within the meaning of 5 U.S.C. § 552(a)(4)(A)(ii). *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), *cert denied*, 110 S. Ct. 1478 (1990).

5. Defendant Central Intelligence Agency is an independent agency and member of the U.S. Intelligence Community. CIA is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Langley, Virginia.

## BACKGROUND

### *The 1983 Soviet "War Scare"*

6. During the tense years of the Cold War, the American public lived in near constant fear of nuclear threats posed by the Union of Socialist Soviet Republics ("Soviet" or "Soviet Union"). What many do not know, however, is that in 1983 the world narrowly averted a nuclear crisis, thanks in part to one U.S. general acting "correctly out of instinct, not informed guidance."[1]

---

[1] The Soviet "War Scare," President's Foreign Intelligence Advisory Board (Feb. 15, 1990) at x, *available at* https://nsarchive2.gwu.edu/nukevault/ebb533-The-Able-Archer-War-Scare-Declassified-PFIAB-Report-Released/2012-0238-MR.pdf ("1990 Presidential Report").

7. During November 1983, North Atlantic Treaty Organization ("NATO") forces conducted their annual command post exercise to practice nuclear release procedures named as "Able Archer 83." 1990 Presidential Report at 69-70. While these exercises were routinely monitored by Soviet intelligence, certain hallmarks of the 1983 exercise provoked a heightened alert. *Id.* at 70.

8. Specifically, the 1983 Able Archer exercise ("Able Archer 1983") tested new procedures for releasing nuclear weaponry that "emphasized command communications from headquarters to subordinate units," and featured "pre-exercise communications that notionally moved forces from normal readiness . . . to a General Alert." *Id.*

9. In response to their detection of Able Archer 1983, Soviet intelligence initiated a "major mobilization" of their intelligence and military forces. *Id.* This included placing Soviet air forces in Germany and Poland on heightened alert, conducting over 36 intelligence flights, and transporting nuclear weapons from storage sites to launch pads by helicopter. *Id.* at vi, 71-72.

10. The scale of the Soviet response was "unparalleled" and had only been previously observed "during actual crises." *Id.* at vi, 71.

***Lieutenant General Leonard Perroots' De-escalation of the 1983 Soviet "War Scare"***

11. In 1983, then-Major General Leonard Perroots served as the Assistant Chief of Staff for Intelligence at Ramstein Air Base in West Germany, the U.S. Air Force's European headquarters. 1990 Presidential Report at 27-28.

12. Observing the signs of the elevated Soviet military alert, he chose not to respond, thus averting further escalation of the 1983 Soviet "War Scare": "[T]he military officers in charge of the Able Archer exercise minimized" risks to the United States "by doing nothing in the face of evidence that parts of the Soviet armed forces were moving to an unusual level of alert." *Id.* at x.

*See also, id.* at 28 (it was Perroots' decision "not to raise US [sic] readiness in response" to "detection of the Soviet Air Forces' increased alert status").

13. After being promoted to Lieutenant General in 1985, Lieutenant General Perroots subsequently served as the Director of the Defense Intelligence Agency from 1985 to 1988. In 1989, he wrote a letter to the President's Foreign Intelligence Advisory Board ("PFIAB") requesting an investigation into Able Archer 1983 and his concerns with the intelligence community's inadequate treatment of the Soviet Union's response. *Id.* at 27.

14. PFIAB conducted an investigation which resulted in a 1990 report confirming the Soviet Union's fears that the U.S. would launch a nuclear strike (i.e., the "1990 Presidential Report"). *Id.* at vii. The Board's report concluded: "In 1983 we may have inadvertently placed our relations with the Soviet Union on a hair trigger," and that "Soviet military leaders may have been seriously concerned that the US would use Able Archer 83 as a cover of launching a real attack." *Id.* at xii, 71.

15. Although the 1990 Presidential Report was declassified in 2015 after 12 years of FOIA requests, declassification review efforts, and advocacy by the Archive,[2] many of Lieutenant General Perroots' historically valuable files remain classified. This includes the letter in which he documented his concerns surrounding the 1983 Soviet "War Scare" and a related document (January 1989 "End of Tour Report Addendum" and March 1989 "End of Tour Report," collectively, the "Perroots Files"). These files likely tell the cautionary and relevant tale of the dangers of nuclear war by miscalculation and miscommunication.

---

[2] *1983 War Scare Declassified and For Real*, the Archive (Oct. 24, 2015), available at https://nsarchive2.gwu.edu/nukevault/ebb533-The-Able-Archer-War-Scare-Declassified-PFIAB-Report-Released/.

### *Plaintiff's Efforts to Obtain The Perroots Files*

16. Plaintiff's August 2, 2021 FOIA Request to the CIA ("the 2021 Request"), which is the subject of this lawsuit, seeks disclosure of the Perroots Files. But this is not the first time Plaintiff has tried to obtain these historically significant documents from a government agency.

17. On August 15, 2018, the Archive submitted to the Defense Intelligence Agency ("DIA") a FOIA request ("2018 Request") seeking files that likely included a copy of the Perroots Files. Ex. A. The 2018 Request identified the records by accession number, volume, location, file name, date, and box number, and included a copy of Standard Form 135, the form prescribed by the National Archives and Records Administration for the request of records, which identifies the specific location of the files in the Suitland, Maryland federal records facility. *Id.* at 2, 4. The 2018 Request specifically identified three individual boxes. *Id* at 4.

18. After DIA failed to timely produce a single document in response to the 2018 Request, the Archive filed an action against DIA on February 28, 2019. *National Security Archive v. Defense Intelligence Agency*, Case No. 1:19-cv-529 (D.D.C. 2021). Plaintiff's complaint made clear that it was most interested in obtaining copies of the Perroots Files. *See* Case No. 1:19-cv-529, Docket Entry No. 1. As an initial step in the litigation, DIA produced 26 indices between August and September, 2019 purporting to list the documents contained in the three boxes that were the subject of the 2018 Request. *See* Docket Entry Nos. 14, 19.

19. One of the indices produced by DIA indicated that the Perroots Files were housed in one of the three boxes, listing: 1/9/89 "End of Tour Report (Addendum) General Perroots"; and 3/17/89 "End of Tour Report (LtGen Perroots)."

20. After over two years of working with DIA to produce the documents requested, in May 2021, Plaintiff learned of inconsistencies in the documents DIA that had processed in response to the 2018 FOIA Request and subsequent lawsuit. The discovery of these discrepancies prompted the Archive to request that DIA confirm whether the Perroots Files were, in fact, included in the documents processed, and whether the Perroots Files were even in the three boxes at all.

21. After submitting a second FOIA request to DIA, pursuant to the Court's June 8, 2021 directive, DIA confirmed that the Perooots Files were not in their possession. *See* Case No. 1:19-cv-529, Docket Entry No. 43.

### *Department of State's Publication of a Partial Transcription of the Perroots Files*

22. On February 16, 2021, the Department of State's ("DOS") Office of the Historian published a transcribed version of the January 1989 End of Tour Addendum by Lieutenant General Perrooots in a new volume of the DOS series "Foreign Relations of the United States." A transcription of this document, with limited redactions, is available to the public at the following DOS link: https://history.state.gov/historicaldocuments/frus1981-88v04/a.[3]

23. The DOS transcription includes the following citation for the End of Tour Addendum, from the CIA: "(Central Intelligence Agency, National Intelligence Council, Job 90T00435R: Chronological Files (1988), Box 1, Folder 12: C/NIC Chrono for December 1988)."

---

[3] Any reasons for withholding parts of the Perroots Files that are now public have been mooted by its release. Any redactions should be limited to those included in the DOS transcription. *Judicial Watch v. U.S. Department of Justice*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012) ("information that is "already in the public domain" indicates that the agency is "legally required to disclose the documents.")

24. This transcription confirms the Archive's instinct that the Perroots Files would contain information of significant historical value.

25. There is likely information of great historical value to the Archive that was not included in the transcription, but may be in the original form of the document.  For instance, original documents often list the offices within specific agencies that received a document, specific individual recipients, special security designations, and individuals who were copied on the correspondence — information that is not necessarily captured in a transcription.

## PLAINTIFF'S 2021 FOIA REQUEST

26. On August 10, 2021, the Archive submitted to CIA the 2021 Request seeking the Perroots files.  Ex. B, Aug. 10, 2021 Fax Transmission from W. Valdes, National Security Archive, to Information and Privacy Coordinator, CIA.

27. Specifically, the Archive requested the End of Tour Report as identified by the DOS Office of Historian's February 2021 volume of the Foreign Relations of the United States series.  *Id.*  The 2021 Request sought the document wherever it may be found in CIA's files — whether listed at the location listed in the citation included in the February 2021 volume of the Foreign Relations of the United States series, or elsewhere.  *Id.*

28. On August 11, 2021, CIA acknowledged receipt of the 2021 Request at issue and assigned the request a reference number.  Ex. C, Aug. 11, 2021 Letter from M. Lilly, Information and Privacy Coordinator, CIA, to N. Jones, National Security Archive.  The August 11 letter from the CIA indicated that Plaintiff could check the status of the 2021 Request through the CIA website, https://www.cia.gov/readingroom/request/status.  *Id.*

29. As of October 19, 2021, the CIA's website indicates that the 2021 Request remains "in process."

7

30. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), an agency "shall . . . determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request."

31. Neither CIA's August 11 acknowledgement letter nor its website identify an expected time frame for its ultimate response to the 2021 Request.

32. CIA's 2020 Annual FOIA Report indicates that their oldest pending FOIA request dates back to 2009, and that, as of the date of the report, it had 2,736 backlogged requests. Ex. D.

33. To this date, CIA has not made a determination on the Archive's August 10, 2021 request and has not produced any records in response to the 2021 Request.

## CAUSE OF ACTION

*Violation of the Freedom of Information Act for*
*Wrongful Withholding of Agency Records*

34. Plaintiff repeats and realleges Paragraphs 1 – 33.

35. Defendant has wrongfully withheld agency records requested by Plaintiff.

36. Plaintiff has exhausted the applicable administrative remedies with respect to Defendant's wrongful withholding of the requested records.

37. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1) order Defendant to promptly disclose the requested records and make a copy available to Plaintiff;

2) provide for expeditious proceedings in this action;

3) award Plaintiff costs and reasonable fees incurred in this action; and

4) grant such other relief as the Court may deem just and proper.

Date: October 27, 2021                        Respectfully submitted,

/s/ John S. Guttmann
John S. Guttmann (D.C. Bar No.: 251934)
Hilary T. Jacobs (D.C. Bar No. 1021353)
Beveridge & Diamond, P.C.
1900 N Street, N.W., Suite 100
Washington, D.C. 20036
Telephone: (202) 789-6020
Facsimile:  (202) 789-6190
Email: jguttmann@bdlaw.com
           hjacobs@bdlaw.com

*Counsel for Plaintiff*