**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL SECURITY ARCHIVE,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 21-2857 (JEB)** |
| **CENTRAL INTELLIGENCE AGENCY,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

In 1989, as he retired as Director of the Defense Intelligence Agency, Lieutenant General Leonard Perroots wrote a Memo documenting an unaddressed "analytical problem" for the U.S. Intelligence Community.  Now, over three decades later, Plaintiff National Security Archive (NSA) would like a copy of that Memo, and it has deployed the Freedom of Information Act in its suit to obtain it.  The CIA produced the document (a cover letter and accompanying Memo) in response to NSA's FOIA request, but it redacted the full text of the Memo, citing national-security and intelligence concerns.  It now moves for summary judgment.  NSA rejoins that notwithstanding the validity of the CIA's interests in secrecy, the Agency may not continue to withhold the Perroots Memo because (according to NSA) the Memo's text was already made public with CIA permission in a Department of State publication.  Any interests in secrecy are thus moot.  The Court disagrees and will accordingly grant summary judgment to the CIA.

## I.    Background

On August 2, 2021, NSA, a non-governmental organization that promotes research about U.S. national-security decisionmaking processes, submitted a FOIA request to the CIA for a

1

single document: the so-called "January 9, 1989 'End of Tour Report (Addendum) General

Perroots.'"  ECF No. 21-2 (Def. Statement of Undisputed Material Facts), ¶ 1 (citing ECF 21-3

(Decl. of Lauren Holm), ¶ 6).  After being met with silence from the CIA, Plaintiff filed this suit

against the Agency in October of that year.  See ECF No. 1 (Compl.), ¶ 33.  The CIA located the

document in December 2021, see Holm Decl., ¶ 8, and sent a letter in April 2022 telling Plaintiff

that the Agency could release the document in segregable form with redactions as appropriate

under FOIA Exemptions 1 and 3.  See SUMF, ¶ 5 (citing Holm Decl., ¶ 9).

The CIA accordingly released the cover letter to the Memorandum with minor redactions

but redacted the substance of the Memo in full.  See SUMF, ¶ 5 (citing ECF No. 21-4 (Redacted

Perroots Memo and Cover Letter)).  The Agency concluded that the redacted information needed

to be withheld because it could "reveal specific intelligence activities, sources, and methods that

are either still actively in use or which remain viable for use today."  Holm Decl., ¶ 12; see also

id., ¶ 19 ("The Agency protects intelligence methods that may be unclassified, but nevertheless if

disclosed, would reveal sensitive intelligence sources and methods.").  Based on its "line-by-line

review of the record at issue," the CIA also determined that it had segregated "all non-exempt,

reasonably segregable material."  Id., ¶¶ 21–22.

Plaintiff objects to the scope of the redactions — but not because the CIA's national-

security concerns are illegitimate.  Rather, NSA maintains that the CIA may no longer plausibly

assert an interest in keeping the document under wraps because the Agency already disclosed,

albeit in a different form and with some redactions, the same document it is now seeking to

conceal.  According to NSA, the Department of State previously published, with CIA sign-off,

the transcribed text of the Perroots Memo with very minor redactions in Volume IV of the DOS

Series "Foreign Relations of the United States" (FRUS).  See ECF No. 13 (Joint Status Report,

April 29, 2022), ¶¶ 6–7; ECF 1-2 (FOIA Request) at 28–31 (FRUS Perroots Transcript).  The

FRUS series "presents the official documentary historical record of major U.S. foreign policy

decisions and significant diplomatic activity."  Dep't of State, Off. of the Historian, "Historical

Documents."  Plaintiff's position is thus that "any reasons for withholding parts of the [Perroots

Memo] that are public have been mooted by [its] release" in the FRUS.  See Apr. JSR, ¶ 12.  The

CIA, of course, disagrees.

Following several procedural developments not relevant here, Defendant now moves for

summary judgment.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it can affect the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S.

372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion" by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.

R. Civ. P. 56(c)(1).

FOIA cases typically and appropriately are decided on motions for summary judgment.

See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  In a

FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.   Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). The statute promotes these aims by providing that "each agency, upon any [compliant] request for records[,] . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's broad directive. Id. § 552(b)(1)–(9). The CIA here invokes Exemptions 1 and 3, which respectively exempt materials "authorized . . . by an Executive order to be kept secret in the interest of national defense or foreign policy" and materials "specifically exempted from disclosure by statute." Id. § 552(b)(1), (3).

This Court has spilled much ink in prior Opinions over the scope of those exemptions. Unlike in many FOIA cases, however, the exemptions play but a supporting role here.  Plaintiff concedes that "in an alternate universe" — that is, one where the text of the Perroots Memo has not purportedly been released into the public domain — the exemptions that the CIA "claims protect the disputed document could arguably have been properly applied."  ECF No. 25 (Plaintiff Opposition to MSJ) at 1.  But, NSA contends, we are not in such a universe.  On our planet, "CIA has signed off on the declassification and release of the disputed document" in a DOS publication and has thus "waived the right to claim any exemption over at least the published portions of the document."  Id.

The focus of this dispute is therefore the effect of the FRUS publication on the CIA's ability to invoke any FOIA exemptions.  Plaintiff puts forth two reasons why the CIA may not rely on those exemptions here: first, under Circuit precedent, the disclosure of information that an agency has "officially acknowledged" may be compelled over objection, see Opp. at 6–10; second, and relatedly, even in the absence of any official acknowledgment, the CIA must explain with far more specificity than it has why the already-public portions of the Perroots Memo should continue to be withheld.  Id. at 10–12.

The Court will take each theory in turn.

A.  Official Acknowledgment

The official-acknowledgment doctrine provides that "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information."  ACLU v. CIA, 710 F.3d 422, 426 (D.C. Cir. 2013).  "To establish official acknowledgment, a plaintiff must identify information in the public domain that (1) matches the information requested, (2) is as specific, and (3) has been

made public through an official and documented disclosure . . . [by] the Agency from which the information is being sought."  Knight First Amend. Inst. v. CIA, 11 F.4th 810, 815–16 (D.C. Cir. 2021) (internal quotations omitted).

According to NSA, the so-called transcript of the Perroots Memo in Volume IV of the FRUS satisfies all three criteria.  Plaintiff asserts that information in the DOS publication both matches, and is as specific as, the requested information.  See Opp. at 7.  It submits, moreover, that the CIA must have formally "signed off on the declassification of the text of the Perroots Memo" for it to appear in the FRUS.  Id. at 8.  This is so because DOS is required by statute to submit any records selected for inclusion in the FRUS series "to the respective originating agency for declassification review in accordance with that agency's procedures for such review."  22 U.S.C. § 4353(b)(1); Opp. at 8.  That agency here was the CIA, id. at 8, which has a "Historical Programs Staff specifically tasked with coordinating [FRUS] Series reviews."  Opp. at 3.  Plaintiff also points out that "the preface to Volume IV thanks CIA staff for 'arranging full access to CIA records.'"  Id. (citing FOIA Request at 15–18 (Preface to FRUS Vol. IV) at 17).  In sum, all signs suggest that "the text of the Perroots Memo could not have made it into [] Volume IV without . . . CIA's cooperation and involvement."  Id.  And that, Plaintiff submits, must mean that the CIA officially acknowledged the portion of the Perroots Memo that was published in the FRUS.  Id. at 9.

While NSA recognizes that courts "do not deem official a disclosure made by someone other than the agency from which the information is being sought," Knight First Amend. Inst., 11 F.4th at 816 (internal quotations omitted), it also points out that "a disclosure by one component of an executive department may bind another component within the same department."  Id. at 817 (internal quotations omitted).  Plaintiff here maintains that the decision of the "CIA's

dedicated FRUS Series declassification staff" to permit publication of the Memo in the FRUS was a decision on behalf of the entire agency.  See Opp. at 9.

The CIA has a rebuttal.  In response to NSA's arguments, the Agency submitted supplemental, classified, *ex parte*, *in camera* declarations, including one from Vanna Blaine, an officer in the Litigation Information Review Office, and one from Donald J. Blersch, the Senior Coordinator of the Diplomatic Security Service for Security Infrastructure in the Bureau of Diplomatic Security from the State Department.  Blaine's declaration, for instance, "elaborat[es] the CIA's role in the classification review process" for Volume IV of the FRUS.  See ECF No. 27 (Defendant Reply) at 2–3.  "The declaration also explains why the CIA cannot further address this issue on the public record."  Id. at 3.

The Court has reviewed the Government's classified, *ex parte* declarations, along with a copy of the requested Memo.  Having done so, it concludes that the transcript contained in Volume IV was not made public through an "official and documented disclosure" by the CIA. The Government's declarations confirm that the CIA — and this includes the agency and its "components" — was not properly involved in the document's disclosure.  Plaintiff's failure to show that the third precondition of the official-acknowledgment doctrine was satisfied is enough to render the doctrine inapplicable here.  The Court therefore need not address whether the first two requirements of sameness and specificity are satisfied.

The Court is acutely aware of the frustration its admittedly cryptic analysis may engender.  But FOIA requires it to remain parsimonious in its explanation, lest it "pry[] loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods."  Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983).  The Court assures NSA, however, that the CIA has sufficiently shown its lack of

involvement in the FRUS publication and supported that position with declarations that must be accorded "a presumption of good faith." SafeCard, 926 F.2d at 1200.

    B.  Public Domain

Plaintiff next contends that notwithstanding who disclosed the material that ended up in the FRUS, the CIA must still explain why it continues to withhold information that is already public.  See Opp. at 11.  Defendant, for its part, submits that not just any public disclosure suffices to waive a FOIA exemption or weaken its applicability; rather, as the official-acknowledgment doctrine provides, only those public disclosures that are "officially" made public affect an agency's ability to invoke an exemption.  See Reply at 3.  In other words, Defendant's position is that there is no "public disclosure" exception that exists separate from the "official acknowledgment" exception.

This Court need not resolve whether public disclosure of a document via unofficial channels could ever suffice to waive an agency's ability to invoke a FOIA exemption.  All NSA requests in this case is a "'specific explanation for continued withholding of information' that has been made public, even when the public information was released unofficially."  Opp. at 11 (quoting Washington Post v. Dep't of Def., 766 F. Supp. 1, 10 (D.D.C. 1991)) (emphasis added).  The CIA has provided that to the Court here.

Once again, the Court begs Plaintiff's indulgence, as it must be vague.  It assures NSA, based on its review in camera of the documents, that the Agency has diligently explained in those declarations why it must continue to withhold the contents of the Perroots Memo despite the FRUS publication, and it has done so with specific reasons and support.  The Court's confidence is buttressed by the fact that it must give "substantial weight" to the CIA's declarations "concerning the details of the classified status of the disputed record because the

Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of a particular classified record." Larson, 565 F.3d at 864 (quoting Ctr. for Nat'l Sec. Studs. v. Dep't of Just., 331 F.3d 918, 927 (D.C. Cir. 2003)).  The CIA has sufficiently explained why classification of the information is still warranted to protect "intelligence activities" or "intelligence sources or methods."  MSJ at 6.

*     *     *

Having dispensed with Plaintiff's general objections to withholding here, the Court is left with the CIA's reliance on Exemptions 1 and 3.  As Plaintiff does not contest the applicability of those exemptions on their merits, summary judgment for Defendant is appropriate.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 4, 2022